Good morning. Please be seated. Our first case this morning is Chicago Board Options v. International Securities. Mr. Bangley. Good morning, Your Honors. May it please the Court, the accused system would be at trial. The District Court found that the CBOE hybrid system did not infringe as a matter of law when it issued a summary judgment decision in 2011. The Court found at that time that a question of fact existed as to the CBOE direct system and did not grant summary judgment of non-infringement. We appealed that decision of non-infringement and this Court reversed the District Court on several of its claims instructions. From that time onward, the only accused system that ISC was asserting was the CBOE direct system. That was acknowledged by both parties in their jury instructions and yet in an in limine ruling, the District Court said that ISC had to establish that the hybrid would be the accused system at trial, a system that it had already granted summary judgment on. So the effect of that in limine ruling was that the Court decided the question of fact that it had earlier found as to whether CBOE direct was an automated exchange. Didn't our earlier decision make it pretty clear, however, that we're not dealing with any system that includes the open outcry aspects? Correct. Yes. CBOE direct is a fully computerized system for executing trades as this Court construed automated exchange and it does not include matching and allocating an open outcry. Hybrid did. Hybrid summary judgment was granted as to hybrid. That was never appealed. So we're talking about CBOE direct which meets this Court's construction of automated exchange. The red brief says that, at 35, says that ISC's assertion that the District Court confirmed that it would not permit ISC to assert that CBOE direct is the accused system is false. Right. As they boldface that. Supposing they agree that the ultimate issue for trial, I'm quoting from your brief, is not whether CBOE direct is independent or integrated with hybrid, but instead whether CBOE direct is fully computerized and doesn't include matching or allocating through the use of open outcry. Your problem goes away. I want to see if that's what they'll say. That's what I'm going to ask them. I assume you'd agree your problem goes away in that circumstance. Yes. I mean, we're just focusing, there's an interplay between the two. The only possible system that was remaining after this Court's initial reversal was CBOE direct and that is a fully computerized system. But the District Court has made quite clear in one sentence they said that Dr. Ma will be free to testify and if you can show that kind of automated exchange system that is covered by the patent, you can prevail. That's the sentence. I could read the sentence here and prove it. I remember that sentence from the brief, but that's simply not true. Unless ISC can show that the system is independent of floor-based trading. Right. Well, that independent limitation gets into the next issue, which is this Court's construction of automated exchange. But going back, isn't really the question where the CBOE direct and the hybrid systems are separate systems or they're intertwined? Why didn't you go to trial on that issue? Because that is contrary to this Court's construction of automated exchange. Whether they're integrated, whether they're independent, whether they incorporate a routing system or routing algorithm are all additional limitations to this Court's disclaimer embodied in its construction of automated exchange. The Court was willing to let you take that issue to trial. The Court was not willing to let us try whether or not CBOE direct was an accused system. That's very clear from its final ruling. No, but whether CBOE direct and the hybrid system were separate or intertwined, and that gave you the avenue towards a path towards success, let's say, but you chose to not try that issue. No, I disagree, Your Honor. We were told that the only thing we could accuse of infringement was the hybrid. That's from the order at 824. It couldn't be clearer. Well, the district court did say that it considered hybrid the accused product, but it went on. Why doesn't this statement give you the opportunity that Judge Raynard's referring to? Dr. Ma may testify, but may not express an opinion that DOE direct, CBOE direct infringes unless he can show the system is independent of floor-based trading. Isn't that the issue? Because the independent is an incorrect limitation. What this court said was a fully computerized system for executing trades such that it does not include matching or allocating an open outcry. So proving that they're dependent or independent or integrated adds additional limitations to this court's scope of the disclaimer. And that's the problem. We should, under the law of the case, be entitled to go to trial in front of a jury and accuse the system that we've accused for the last four years. Well, the way I understood our earlier opinion, we said we don't include within the scope of the patent partially automated systems. If you include hybrid, don't you have a system that becomes then partially automated? No, I mean, what this court said is... I'm asking, why isn't the independent language that the court refers to here, the district court refers to, fully consistent with our claim construction? Because your claim construction does not say independent makes no reference to that. It just says such that it does not include matching or allocating an open outcry. That is the scope of the disclaimer. So to add additional limitations, such as proving that these two execution systems are independent or not integrated, goes beyond what this court determined to be the proper scope. But isn't that just giving effect to the disavowal of partially automated systems? No, it's not, Your Honor, because what CBOE Direct does is operate as a fully computerized system for executing trades. So the disavowal is trading on another system, a floor-based system, or matching and allocating an open outcry, as this court says. I sense that the problem comes when you incorporate some aspect of hybrid into the fully automated system. Well, I mean, the fully automated system is a part of the overall hybrid. There's no question. But the floor operates separately. I mean, the language that this court uses does not include, it clearly does not include matching and allocating an open outcry. CBOE Direct is a fully computerized system that executes in excess of 92% of the trades that occur at CBOE. So it operates within this court's construction of an automated exchange. It does not include matching or allocating. And that should be the burden of proof under this court's own construction. You say it must not include matching or allocating. What it must not include is any use of the floor. That's incorrect. I mean, the limitation, this court's disclaimer is does not include. So CBOE argues that the routing of orders from CBOE Direct to the floor should broaden that disclaimer. And that's simply not true. It does not include matching and allocating an open outcry. You used a figure a second ago, 92%. Does that mean that the 8% then deals with the somehow incorporating the open outcry system? All that means is those orders are routed away from the fully computerized system and executed in the open outcry. But that's not including it within that fully computerized system that's just routing it away. It's sending something out. It's not matching or allocating. It's not execution. So this court defines an automated exchange as fully computerized system for executing trades. No reference to the routing. And matching and allocating, as your Honor knows, is part of the execution system. Routing is not. So it includes the open outcry only in routing it elsewhere. And that is not independent of it. Am I understanding correctly that the difference between inclusion and independence as you're trying to make a distinction? Well, the routing certainly does not meet the definition of includes because all it's doing is sending. It's not including. It's not incorporating. It's not integrating. It's sending something away. So such that it does not include matching and allocating, those are the limitations. That is the scope of the disclaimer that we're talking about. And CBOE Direct meets that definition. With further reference to the automated exchange construction, we're appealing that the court's violation of this mandate, we believe, because the court, in fact, changed that construction in two ways. First, it changed it in the jury instruction that it was proposing to give to the jury. It added a so-called converse to this court's construction, which simply went beyond its authority. This court's construction of automated exchange is the law of the case, and the district court is not free to change it in any way. Beyond the construction or the change in the construction in the jury instruction, we've touched on some of the other changes. In Lemonet rulings, the district court said that in addition to ISC having to prove that CBOE Direct did not include matching and allocating in an open outcry, three additional limitations were inserted into that scope of disavowal. We had to prove that they were independent. We had to prove that they were not integrated. We had to prove that CBOE Direct did not utilize a routing algorithm found in a CBOE patent. That's not even an issue in this case. And the final limitation, the judge had done sua sponte, and CBOE doesn't even address that in its brief, because the law is clear that a party's own patent does not avoid infringement. Can you address real quickly the indefinite issue I'm claiming to? Sure. The indefiniteness issue is tied really to the court's violation of this court's, the district court's violation of this court's mandate from the first appeal. In the first appeal, this court reversed the district court's construction of matching. The district court had found that matching was based only on price. This court reversed that, pointing out in the specification and the claims clear evidence and clear references to matching being based on other criteria, including allocating parameters, those allocating parameters including pro rata allocation as found in claim two. On remand, the district court found that contrary to this court's findings and reasoning, that all matching steps had to occur before allocating steps. And as a result of that, found that claim two was indefinite as not disclosing structure for pro rata matching. Now, that's the sole basis for the indefiniteness finding, and it's based on its misinterpretation of the claim, the specification, and this court's opinion. With respect to what this court said in the first instance in reversing the district court at 677 F3rd at 1370, claim two also provides that matching is based on a pro rata basis. And then in footnote four on that same page, the court cites to the specification in which the process of pro rata matching is described in a preferred embodiment. And that discussion includes the following. Orders and quotations may further be matched based on size. Professional two now has the largest size and 66% of the size of the highest bid and is matched for 14 contracts. That is part of the algorithm that our expert testified concerning the structure for pro rata matching under claim two. And so the district court's decision to require all matching steps occur before allocating is clearly contrary to what this court cited in reversing the district court the first time. All right. Thank you, Mr. Bagley. We consumed your rebuttal time, but we'll restore that to you. And if you can give Mr. Marshall 18 minutes, that'll keep the time. Thank you, Your Honor. Thank you, Mr. Bagley. Good morning, Your Honors. May it please the court. Mr. Marshall, same question I asked Mr. Bagley. Go ahead. In the red brief at 35, it says ISE's assertion that the district court confirmed that it would not permit ISE to assert that district CBOE direct is the accused system is false. It is. Okay. And so... Let me finish. Yes, sir. So is CBOE agreeing with ISE that the ultimate issue for trial and ring for the brief is not whether CBOE direct is independent or integrated with hybrid, but instead whether it's fully computerized and does not include matching or allocating through the use of open outcrack? We vigorously disagree, Your Honor. If that were the issue, then this court's previous ruling on disavowal would be totally negated. In the opinion of the court on the first appeal, at 677 F3rd 1372, the court set forth, and where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question, unquote. In other words, disavowal narrows and trumps the ordinary claims destruction regimen. What ISE wants to do is to finesse disavowal and go directly to a claim construction on CBOE direct. But in order to avoid summary judgment, ISE raised the issue itself that hybrid was really not one exchange, but it was two exchanges, two exchanges running side by side, and that the one was the floor, and the other was electronic, and the electronic exchange infringed. Judge Lefkoe considered that there was evidence on both sides of the issue, and she turned that to the jury, and said, this is a question for trial, the jury's going to have to decide. Now, ISE is conflating an instruction to the jury with a question of fact that the jury has to find. There is no rule or principle or anything that I know of that the claim construction, a claim construction defines the scope of the meets and bounds of what the jury is supposed to find. If I understood Mr. Bagley, he was taking issue with the independent of hybrid language which the district court used. Does that strike you as being a broader requirement than the disavowal which we included in our opinion? No, because as this court also stated in its original decision, in response to the argument which we're hearing again today, that the patent does not disclaim, does not require that all trades be made electronically, he says he's only wanted 92% of them that are made electronically. This court said at 677 F. 3rd, 1372, quote, ISE nonetheless argued that the patent should not disavow all aspects of the traditional floor based system because it does not require a trading system to execute all trades automatically. That's what you just heard again. This argument misconstrues the district court's construction of automated exchange. The district court's construction requires that such an exchange be, quote within a quote, fully computerized such that it does not include matching or allocating through the use of open outcry. Well that means that ISE would say that they could go after everything that is electronic and if they go to CBOE direct, CBOE direct under the classic claim construction principles would cover it. But that isn't what the construction says. The construction doesn't say that all trades have to be made electronically. The construction says that no trades, the system is such that no trades can be made electronically, that no trades can be made on the floor, excuse me. And that's what... We say fully computerized may be the key language in our opinion, fully computerized. And I think Mr. Bagley is arguing when we just use the computerized portion of hybrid we have not violated that fully computerized requirement of the, you know, the, you know, the, of this court's opinion and the disavowal. Isn't that the way you understand him and what is wrong with that argument? Well it is, I don't understand it that way judge and that's not the, the, the point is that hybrid according to ISE was two separate things and one of them infringed. The district court said that because it disavowed... If it's, if we keep the system fully computerized have we satisfied this court's claim construction? If you can show that CBOE direct, the electronic aspect of hybrid is separate and independent of the floor and not integrated with the floor, that was the question, then you can accuse CBOE direct and the judge said that on a number of different occasions. The judge didn't say that they can't accuse CBOE direct, the judge said if you want to accuse CBOE direct you first have to show that CBOE direct is not part of the overall system that has been disclaimed and that goes back to this court's statement of what the law of disavowal was on the first appeal, that's already been decided. So, it's a two-step process and the first step is mandated by the fact of disavowal. Absent disavowal they could pick out whatever they wanted. I understand that, the question is whether they satisfy that disavowal by keeping the system fully computerized even if part of that computer, computerized element comes from hybrid. Well, that would mean it wouldn't have to be independent of hybrid but it would still be fully computerized. Yes, but you can only get there if you can first establish because of disavowal that that computerized aspect is independent of the floor. Now, why does it have to be independent? Because if it's part of the… If it's fully computerized however that occurs, haven't we satisfied the disavowal? No, because what you're looking at… The computerized always has some element of reporting what's happening in life. You know, we computerize my heartbeat but that's because it's actually beating. Now you're not saying that trading has to… you have to report on some kind of trading as long as we have the fully computerized version of that trading, do we worry about anything more? We do not have a separate fully computerized trading system. In our system, an order can be placed in the floor, an order can be placed electronically. An order that's placed in the floor can be executed on the floor or it can be executed electronically. An order that's placed electronically can be executed electronically or it can be executed on the floor. Some orders can be split, partially executed electronically and the rest of it executed on the floor. This is one system, this is one system. What they're trying to do is to excise from that system the electronic aspect and the ruling on disavowal which Judge Lefkoe made and which this court affirmed and even expanded to cover partially automated systems prohibits them from doing that because if the electronics and the floor are integrated then it's that one system which according to this court's explication of the law is beyond the reach of the claims because of the disavowal. Because the construction requires that no trades in the system be executed electronically on the floor. So what they're trying to do is to just, the question that they raised, the question that they, by raising avoided summary judgment and there may even be a judicial estoppel here, they're running away from it and they can't run away from it. If you let them run away from it then you're negating your decision, your judgment on disavowal. Where does that fit in? When you say judicial estoppel, do you say that if we find that the judge's determinations on the motion to eliminate were correct then they're stuck with their stipulation? That's right. Okay. That's right. Can we turn a second to the claim two and indefiniteness? It has to do with matching and allocation. I look, however, at figures 4A and 4B. I'm sorry, Your Honor, I don't have the patent in front of me. I'm sure this is very familiar to you. Oh, yeah. I try to forget these things as quickly as I can. Okay. Well, get 4A and 4B in front of you then. And you'll see in 4A we have a bit matching process. And it takes you through the steps of that process. 4A, the bit matching process. What's the number of that? Oh, I see it. I got it. The whole thing is the process. The process starts and goes through this algorithm. We have in 4B the allocation algorithm. But notice that the allocation algorithm is part of the bit matching process. Right in the middle of figure 4A, the circle in the middle, is the allocation algorithm, which then appears in 4B. So those two can't be fully unrelated, can they? In fact, the one includes the other. Well, this court ruled that matching and allocating are separate things. And that's in the first opinion. They have some distinct features, but the figure is rather self-evident, isn't it? That they can't be fully unrelated because one's a part of the other one. Well, no, one follows after the other one. Well, no, it's in the middle. They're not coextensive in time, but the processes aren't wholly unrelated. Of course they're not. I agree with that. Of course they're related, but they are different. They are separate. And allocating is not part of matching. Well, they can overlap or they cannot. That is, they're not coextensive in time. They can be before or after. But didn't perhaps the district court err in taking that separateness a little too far? I think there are ways in which, of course, they're separate. They're not doing exactly the same thing. But they are related because allocation is part of the matching process. Well, Your Honor, this court previously ruled that matching and allocating are different things. Well, and I'm suggesting that perhaps the district court overread what we were trying to say. We were making some distinctions between the two, and indeed they are distinct processes. But the allocation process is certainly part of the matching process. It's right in the middle of it there. No, it's not. Am I missing something? I'm looking at the bid matching process, and right in the middle there is allocation. And if this happened, once you've allocated, it goes back through the process differently, the matching process differently? Well, first you go through the matching process, and then you get to the allocation algorithm. I don't see that you go back to matching again. Well, actually, if— How about—let me take you to A149, column 18 of the patent. Column 18? Yes, look at line 60. It'd be around line 62, 63, and it speaks about the balance of 36 contracts are allocated among the three professionals on a pro-ratification. I'm sorry, Your Honor, I haven't quite— Okay. Column 18, what line, sir? Go down to 62. 62. In the sentence it says the balance of 36 contracts. Yes, okay. Okay, and then in the very next sentence it says because the pro number one has time priority or pro number two, pro number one gets matched first. And I'm citing to this, in addition to the figure that Judge Rader pointed you to, why is that not sufficient structure? An additional language continues on on column 19, speaking about the size of the highest bridge and is matched for the 14 contracts, leaving 17 contracts. It seems to me that it's describing a step-by-step process of how matching occurs. Well, matching means identifying. But I think Judge Rader is asking you very accurately why can't some of the structure for allocating be some of the means for matching? And I think your only argument is, well, they're completely separate, but they can't be separate. We've just gone through that. Well, they are separate, and they do not occur at the same time. And, Your Honor, this Court has already ruled that part of it. I think you're over-reading the ruling is what I'm suggesting to you. I think Judge Rain is suggesting the same. And am I. We're happy to hear your response. I'm just not sure I've understood it yet. In column 16, there are examples given in the past. I'm sorry. We cited from this column 16. In column 16, we cited these examples last time. As a first example, at step S-170, the bid matching process determines that all four contracts in the incoming order have to be matched. The match between the incoming order and the custom order in the book memory, 33, is sent to the execute trade process, 27 in step S-172. As a second example, as shown in figure 4A, the bid matching process, 34, completes step S-168, is above matching 10 contracts, and so on. The first example indicates all incoming orders initially are matched to public customer orders. And where no incoming orders remain to be filled, the order is executed. In the second example, the incoming order is initially matched to the available public customer orders. But if there are remaining incoming orders, the balance is then allocated among quotations and professional orders. At column 16, 64 to 67, upon allocation after it has been determined that the orders have been filled, the orders are matched and sent for execution. But the allocation process completes it. There's really nothing to be done. These examples show that matching occurs at some point that's distinct from allocating. Matching can occur after allocating. Well, I see what the patent says. But in the real world, it doesn't work that way. And what you have... That's also what our first opinion said. I know, but what you have is matching being an identification. And after you identify, then you allocate based upon the formula as to who gets what that is left over. There's nothing left to be done. You said in a throwaway, I know. But if you know, how can the district court not be in error? I'm sorry, I didn't hear that, Your Honor. I said, you said in a throwaway, I know, in quotes. But if you know that, then how can the district court not be in error? I'm sorry, Your Honor. Counselor, would you say that the term pro rata, pro rata, that needs no further defining, right? That's correct. It's a term of art we all pretty much understand. I see you know what that means. Okay. Anything further? Mr. Marshall? Well, just, Your Honor, I had intended and I had expected... There's one thing that I've been asked to correct, Your Honor. The judicial estoppel relates to what ISE argued to avoid summary judgment, not to the middle rulings. That they raised the question, they benefited from it, they avoided summary judgment, and now they basically took, had judgment entered against them because they didn't want to, have to actually prove what they said was the fact. Thank you, Mr. Marshall. Mr. Bagley, we've restored your rebuttal time. Thank you. Just very briefly on Mr. Marshall's last point as stated earlier, the error is that we are in a position or we're put in a position of having to prove the accused system was something that the district court had already granted summary judgment as to. The district court had denied summary judgment as to CBOE direct, and I just wanted to clarify that issue. That was the only accused system. CBOE agreed with that all the way through to the eve of the trial. Their jury instructions only referred to CBOE direct as being the accused system. So everyone's focus was on that, and so the district court decided at the 11th hour that we had to prove something infringed that had already been found not to infringe. Mr. Marshall's arguments on the disclaimer or disavowal scope, again, repeatedly referred to the district court's additional limitations of separateness, independence, non-integrated. None of those are invoked by this court's construction and the scope of the disclaimer. We only need to prove that CBOE direct does not include matching and allocating an open outcry, and it clearly does not. Thank you very much. Thank you, Mr. Bagley.